# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

    v.                                Case No. 08-C-1067

CHRYSLER GROUP, LLC,

        Defendant.

---

## DECISION AND ORDER

---

## I.  PROCEDURAL BACKGROUND

The plaintiff, United States Equal Employment Opportunity Commission ("EEOC"), filed a

complaint against the defendant, Chrysler Group LLC ("Chrysler"), alleging a violation of Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  This court has jurisdiction pursuant to 28

U.S.C. § 1331.  In particular, 42 U.S.C. § 2000e-5(f)(1) expressly authorizes the EEOC to commence

this action.  Both parties have consented to magistrate judge jurisdiction.  *See* 28 U.S.C. § 636(c); Fed.

R. Civ. P. 73(b)(1).  This action is now before the court on Chrysler's motion for summary judgment

pursuant to Federal Rule of Civil Procedure 56.  Now that the motion has been fully briefed, it is ready

for resolution.  For the reasons that follow, the defendant's motion for summary judgment will be

granted in part and denied in part.

## II.  FACTUAL BACKGROUND

This case dates back to June 2006, when Mike Miltenberger ("Miltenberger"), the second-shift

supervisor at Chrysler's national parts distribution center ("NPDC") in Milwaukee, Wisconsin,

ordered Donna Hobbs ("Hobbs") to work as a "picker/packer" in the backorder release ("BOR") area

rather than in her normal position as a power sweeper. (Plaintiff's Proposed Findings of Fact ("PPFOF") ¶¶ 1, 3.) On June 8, 2006, Rolf "Pete" Peterson ("Peterson"), warehouse manager, asked Miltenberger for more employees to expedite a "hot order" in the BOR area. (PPFOF ¶ 2.) Thereafter, Miltenberger organized a start-up meeting at approximately 4:00 p.m. (PPFOF ¶ 1.) Immediately after the start-up meeting, Miltenberger ordered Hobbs to work in the BOR area after four hours of her normal job duties. (PPFOF ¶ 3.)

Driving the power sweeper was a coveted position because it kept workers off of their feet. (Defendant's Proposed Findings of Fact ("DPFOF") ¶ 51.) Therefore, working in the BOR area as a picker/packer was considered less desirable. While Hobbs was qualified to perform the job responsibilities as a picker/packer, she claimed that every employee, including another power sweeper on second shift, Louie Whiteman ("Whiteman"), had experience picking parts. (PPFOF ¶¶ 4-5.) Because Hobbs had more seniority than Whiteman, a male employee, Hobbs objected and told Miltenberger that Whiteman should have been asked to switch to picker/packer that night. (DPFOF ¶ 53.) Miltenberg told Hobbs that he chose her because she had more experience filing orders in the BOR area. (PPFOF ¶ 5.)[1]

Michelle Zahn ("Zahn") also worked second shift on June 8, 2006 under the sole management of Miltenberger, except she worked as a forklift operator or "loader." (DPFOF ¶ 49.) That night, the alternate committee person for the labor union whom union employees could approach regarding various concerns was Roman Wojciechowicz ("Wojciechowicz"). (DPFOF ¶ 56.) After Zahn overheard Miltenberger ordering Hobbs to work in the BOR area that evening after the start-up meeting, (PPFOF ¶ 6), she told Wojciechowicz that the situation with Hobbs and Miltenberger

---

[1] Hobbs remained on as a sweeper on June 8, 2006. (DPFOF ¶ 55.)

sounded like discrimination because Miltenberger was making Hobbs do a less desirable job than her male counterpart when Hobbs had more seniority, (DPFOF ¶ 57).

After Miltenberger approached Wojciechowicz around 4:45 p.m. to see how the "hot part" order was progressing, Wojciechowicz informed him that Zahn had remarked that his decision to reassign Hobbs—rather than Whiteman—to the BOR area seemed discriminatory. (PPFOF ¶¶ 10-11.) Miltenberger then instructed Wojciechowicz to obtain a statement from Zahn. (PPFOF ¶ 12.) At approximately 5:15 p.m., Wojciechowicz asked Zahn if she wanted to file a grievance against Miltenberger, to which Zahn told him that she did not because any dispute between Hobbs and Miltenberger was not her business. (PPFOF ¶¶ 13-14.)

At approximately 8:00 p.m. on June 8, Hobbs went to Miltenberger's office pursuant to his open door policy and asked why Whiteman had not been ordered to work in the BOR area. (PPFOF ¶ 16.) Miltenberger repeated his earlier explanation that Hobbs had more experience picking parts that Whiteman. (PPFOF ¶ 17.) According to Hobbs, Miltenberger also told her that he had heard rumors that she was charging him with "women's discrimination." (PPFOF ¶ 18.) Hobbs then accused Miltenberger of favoring male employees, particularly Wojciechowicz, but she maintains that she did not use the word "discrimination." (PPFOF ¶ 19.) Miltenberger demanded Hobbs to tell him which employees shared her complaint; Hobbs reluctantly identified a few employees. (PPFOF ¶¶ 20-21.)

Thereafter, Miltenberger called Tom Young ("Young"), the safety labor relations human resources supervisor ("HR supervisor"), who was at home, to seek advice on how he should proceed in light of the allegations that he was favoring men. (DPFOF ¶¶ 21, 61.) Young advised Miltenberger to obtain a statement from everyone involved. (DPFOF ¶ 62.) Later, Miltenberger called Young at home a second time. (Pl.'s Resp. to DPFOF ¶ 63.) At that point, Young left his bed and returned to

the facility at approximately 9:30 p.m. to investigate what was happening.  (DPFOF ¶ 64; PPFOF ¶ 24.)  Once Young returned to the plant, he spoke with both Miltenberger and Wojciechowicz before meeting with Zahn and Hobbs.  (DPFOF ¶ 67.)

Although the parties dispute whether Young, Miltenberger, and Wojciechowicz, as Zahn's and Hobbs's union representative, met with Zahn or Hobbs first, (Pl.'s Resp. to DPFOF ¶¶ 68, 69, 80), it is undisputed that they did, in fact, meet with Zahn and Hobbs individually, (DPFOF ¶ 67).[2]  When Hobbs entered Young's office for her meeting, Young immediately placed her on notice of termination for disrupting the workforce.  (PPFOF ¶ 27.)  Young questioned Hobbs about her having talked with Zahn about bringing a discrimination charge against Miltenberger.  (PPFOF ¶ 30.)  The parties then dispute what, exactly, Hobbs told Young during their meeting.  (PPFOF ¶¶ 28-29; DPFOF ¶ 82.)  However, both parties cite to Hobbs's deposition testimony as reflected on page 85, which states as follows:

> I said, I walked into Mike's office and talked to him about my seniority and -- and I explained to him about Louie and me and I had more time.  And I said, and then I said a few things to Mike, you know, about showing favoritism with the -- some of the men, and Roman especially, and Roman was sitting there.  And I said, but, no, I didn't say nothing about discrimination against women or anything.

(Hobbs Dep. 85.)

Hobbs also testified that Young threw a notepad at her and ordered her to write a statement confirming that she was not accusing Miltenberger of sex discrimination.  (PPFOF ¶ 31; DPFOF ¶ 83.)  Hobbs asked to write her statement at home because she did not write or spell very well, however, Young asked Miltenberger to write her statement instead.  (DPFOF ¶¶ 84-85.)  Hobbs claims not to have told Miltenberger what to write, and that she did not read what he wrote before

---

[2]    For purposes of this motion, the court will accept that Young, Miltenberger, and Wojciechowicz met with Hobbs first, then Zahn, as Chrysler did not dispute that this was the testimony of Hobbs and Zahn.  (*See* Def.'s Resp. to PPFOF ¶¶ 25, 36.)

signing the statement. (DPFOF ¶ 85.) Young's behavior and tone of voice used during his meeting with Hobbs is disputed. According to Hobbs, Young screamed, pounded his fist on the desk, swore, and threw things. (DPFOF ¶ 86; PPFOF ¶ 30.) According to Young, he used his "normal tone of voice" during this meeting. (Young Dep. 117.) According to Wojciechowicz, Young "might have raised his voice, but in my personal opinion, and this is my opinion, Tom Young raised his voice, but I don't think he was ranting or screaming." (Wojciechowicz Dep. 49.)

When Zahn arrived in Young's office, Young reminded her that she was on a "last chance letter." (PPFOF ¶ 36, DPFOF ¶ 71.) According to Zahn, Young wanted to know whether she was accusing Miltenberger of discrimination. (PPFOF ¶ 36.) At some point (the precise point in time is not known), Young told Zahn that Chrysler takes allegations of discrimination very seriously. (DPFOF ¶ 70.) Zahn denied that she was accusing Miltenberger of sex discrimination—this was based on her fear that Young might fire her on the spot. (PPFOF ¶ 37; DPFOF ¶ 75.) Also during this meeting, Young told Zahn that she was "on notice, pending investigation" and that she "may be subject to discipline up to and including discharge." (DPFOF ¶ 72.) Young also asked Zahn to provide a verbal account and a written statement of the events of the evening. (DPFOF ¶ 74.) With respect to Zahn, the parties dispute whether Young yelled and pounded his fists on the table during this meeting. (PPFOF ¶ 38; DPFOF ¶¶ 76-78.) The parties also dispute for how long the meeting with Zahn lasted. (Pl.'s Resp. to DPFOF ¶ 79.)

At 11:25 p.m. on June 8, 2006, Young composed an email indicating that he put both employees "on notice" for disrupting the workforce. (PPFOF ¶ 40.) Although it is undisputed that Young talked to Hobbs and Zahn of possible discipline, up to and including termination, (PPFOF ¶ 40; Def.'s Resp. to PPFOF ¶ 40), the parties dispute whether putting an employee "on notice" was

standard procedure, (Pl.'s Resp. to DPFOF ¶¶ 72-73). After finishing their shifts, Hobbs and Zahn went to Hobbs's house to discuss the events of that evening. (PPFOF ¶ 45.)

On the following day, June 9, 2006, Young referred Hobbs's and Zahn's allegations to the EAC for investigation; he also informed the plant manager of the allegations. (DPFOF ¶ 89.) First shift supervisor Bobby Phelan ("Phelan") and union representative Waymond Stinson ("Stinson") conducted the EAC investigation regarding these allegations against Miltenberger. (DPFOF ¶ 90.) The results of this EAC investigation were "inconclusive," meaning that "the findings were neither 'founded' nor 'unfounded' but were 'unsubstantiated,' in that the evidence was indeterminate." (DPFOF ¶ 92.) Later in time, Rolf and Stinson conducted a second EAC investigation. (DPFOF ¶ 97.)

Neither Hobbs nor Zahn reported to work the following day—Friday, June 9, 2006. (PPFOF ¶ 48.) When returning to work on June 12, 2006, Hobbs and Zahn asked Wojciechowicz to file a grievance with the union regarding Young's behavior during their respective meetings on June 8, 2006. (DPFOF ¶ 95.) Hobbs and Zahn signed this grievance, which became known as Grievance 2006-25. (DPFOF ¶ 96.) Wojciechowicz does not remember to whom he submitted the signed grievance. (DPFOF ¶ 96; PPFOF ¶ 51.)

On either June 12 or 13, 2006, Hobbs and Zahn each filed a charge of discrimination with the EEOC alleging that Young retaliated against them by threatening their employment for complaining of sex-based discrimination. (DPFOF ¶ 102.) After Hobbs and Zahn filed charges with the EEOC, Grievance 2006-25 was put on hold pending resolution of this action. (PPFOF ¶ 52; DPFOF ¶¶ 103, 105.) The parties dispute who put such grievance on hold, however. According to the EEOC, Chrysler and the union placed Grievance 2006-25 on "joint hold." (PPFOF ¶ 52.) According to

Chrysler, the union placed Grievance 2006-25 on hold and notified Chrysler of the same thereafter. (DPFOF ¶ 103.)[3]

### III.  STANDARD OF REVIEW

A district court shall grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[3] Chrysler claims that it could not unilaterally place a grievance on hold without the consent of the union.  (DPFOF ¶ 104.)  The EEOC agrees with this assertion, but further claims that neither Chrysler nor the union could unilaterally place a grievance on hold without consent of the other because putting a grievance on hold must be a joint action by Chrysler and the union.  (Pl.'s Resp. to DPFOF ¶ 104.)

Fed. R. Civ. P. 56(c)(1).  However, a mere scintilla of evidence in support of the nonmovant's position is insufficient.  *See Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.  *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255).  "'[I]n the light most favorable' . . . 'simply means that summary judgment is not appropriate if the court must make a choice of inferences.'"  *Harley-Davidson Motor Co., Inc. v. PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (quoting *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997)).

## IV.  DISCUSSION

In its motion for summary judgment, Chrysler contends that Hobbs and Zahn cannot establish a prima facie case of retaliation.  Specifically, Chrysler argues that Hobbs and Zahn cannot demonstrate that they suffered any adverse employment action.  According to Chrysler, it has never failed to process any grievance submitted to it on behalf of either Hobbs or Zahn.

The EEOC opposes Chrysler's motion.  First, the EEOC argues that Chrysler fails to recognize that material issues of fact remain, thereby precluding the entry of summary judgment.  To this end, the EEOC moves to strike many of Chrysler's proposed statements of fact.  Substantively, the EEOC argues that Chrysler violated Title VII of the Civil Rights Act of 1964 by retaliating against Hobbs and Zahn in anticipation of their filing sex discrimination complaints.  According to the EEOC, Chrysler engaged in unlawful employment practices by verbally harassing Zahn and Hobbs, threatening both with termination, and depriving them of the grievance procedure to which they were entitled.

8

**A. EEOC's Motion to Strike.**

The EEOC objects to Chrysler's proposed statements of fact on numerous grounds. First, the EEOC seeks to strike Paragraphs 24-30, 32, 35, and 36 of Chrysler's proposed statements of fact for Chrysler's alleged failure to support the proposed facts contained therein with admissible evidence. In particular, the EEOC objects to Chrysler's citation to its own response to the plaintiff's request for admissions, which was supplemented with "lengthy, lawyer-drafted statements." (Pl.'s Resp. 8.)

The EEOC, however, admits Chrysler's proposed statements of fact No. 24-29 and 32. Therefore, its motion to strike the Paragraphs containing facts to which it admits will be denied as moot. Insofar as the EEOC moves to strike Paragraphs 30, 35, and 36 of Chrysler's proposed statements of fact, its motion will be denied because the facts contained therein are not material for purposes of summary judgment.[4]

Next, the EEOC moves to strike Paragraphs 36, 40, 41, 48, 58, 59, 66, 71, 72, 73, and 97 of Chrysler's proposed facts because it argues that Chrysler cited sources that do not support the asserted facts.[5] Chrysler's response is two-fold. First, it claims that the EEOC failed to comply with Civil Local Rule 56(b)(2)(B)(i), which requires a party opposing a motion for summary judgment to include, in the case of any disagreement with the moving party's proposed findings of fact, "specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon." Second, Chrysler argues that its citations to the record, in fact, support the asserted facts.

---

[4] Because the EEOC has admitted to some of the proposed facts, while other proposed facts are not material for purposes of summary judgment, it is not necessary to address the EEOC's argument that Chrysler never disclosed Van Der Wiele as a witness.

[5] As previously discussed, Paragraph 36 will not be stricken because it is immaterial for purposes of summary judgment.

Contrary to Chrysler's argument, any failure on the EEOC's part to provide references to the record that contradict Chrysler's assertions of fact is not necessarily fatal to its motion to strike. This is because it is not necessary to provide references to the record that contradict Chrysler's proposed facts if the cited material does not support the proposed facts. If the cited material does not support the proposed fact, evidence contradicting the same may simply not exist; proposed facts may be stricken merely because they are not properly supported. That being said, the court will now address the proposed facts in dispute.

The asserted facts in Paragraphs 40 and 41 are not supported by the cited material. While Young's deposition testimony refers to grievances and signatures, the cited portions do not stand for the propositions that a "grievance is a written document that is signed by both a union representative and a management representative," or that these signatures "do not indicate 'approval' or agreement with the grievance, but merely indicate that both the UAW and Chrysler are aware of, and processing, the grievance pursuant to the collective bargaining agreement." (DPFOF ¶¶ 40-41.) Therefore, Paragraphs 40 and 41 of the defendant's proposed facts will be stricken.

Paragraph 48 states that "[i]t is the union's responsibility to notify union members of the status of grievances." (DPFOF ¶ 48.) In support of this proposition, Chrysler points this court's attention to Young's deposition testimony, which appears to indicate that the EAC would meet with the employees to inform them of the EAC investigation findings. Because the grievance procedures operate independently from the EAC investigation procedures, (DPFOF ¶ 38), it does not appear that the cited portion of Young's deposition testimony stands for the stated proposition. Chrysler also cites to its response to the plaintiff's first request for admissions, but this material also does not support proposed fact No. 48. Accordingly, the EEOC's motion to strike Paragraph 48 will be granted.

The EEOC opposes the facts stated in Paragraph 58 to the extent that the facts described therein occurred over the course of two conversations and not simultaneously. However, the court does not find the presentation of the sequence of events to be confusing as stated. Moreover, the EEOC admitted the facts in Paragraph 58. Therefore, Paragraph 58 of the defendant's proposed facts will not be stricken.

With respect to Paragraph 59, the court agrees that the cited material does not stand for the proposition that Wojciechowicz talked to Hobbs to see if she wanted to file a written grievance against Miltenberger. Rather, the cited material indicates that Wojciechowicz asked Zahn if she wanted to file a written grievance against Miltenberger. (Wojciechowicz Dep. 23.) Whether this mix-up was a product of mistake, it will still be ordered that Paragraph 59 be stricken because it is unsupported by the evidence cited.

The motion to strike Paragraph 66 will be denied in part and granted in part. Insofar as Chrysler's proposed fact asserts that "[i]t appeared to Young that Zahn and Hobbs had told Wojciechowicz different stories," the plaintiff's motion will be denied. The deposition testimony Chrysler cited indicates Young stated that "[t]he two employees both made different statements." (Young Dep. 102.) The cited material, however, does not support the assertion that "Young felt that these differences were crucial since allegations of discrimination, if false or unfounded, could lead to discipline against the involved employee." (DPFOF ¶ 66.) Page 102 of Young's deposition does not reflect any discussion about why Young thought the differences in Hobbs's and Zahn's statements were crucial. Therefore, the latter described portion of Paragraph 66 of Chrysler's proposed facts will be stricken.

The EEOC's objection to Paragraph 71 deals with the chronology of what happened during Zahn's meeting with Young, Miltenberger, and Wojciechowicz. Chrysler states, in Paragraph 71, that

"Young then reminded Zahn that she was on a last chance letter and on probation." (DPFOF ¶ 71.) By inserting the word "then," Chrysler represents that Young made this statement after he told Zahn that allegations of discrimination were taken very seriously by Chrysler. (DPFOF ¶ 70.) In support thereof, Chrysler cites Young's deposition testimony as well as Zahn's deposition testimony. Young testified that he did not recall whether he told Zahn that she was on a last chance letter, leaving one to infer that if he did make this statement, he also does not remember at precisely which point in the meeting he said it. (Young Dep. 84.) On the other hand, Zahn testified that Young told her that she was on a last chance letter as soon as she sat down. (Zahn Dep. 63.) Because the cited testimony appears to contradict the representation as to the timing reflected in Paragraph 71, the word "then," will be stricken from the proposed fact asserted therein.

Paragraphs 72 and 73 of Chrysler's proposed findings of fact deal with whether putting an employee "on notice" was standard procedure. The EEOC objects to Chrysler's assertion that delivering this sort of message was standard procedure, arguing that Chrysler has not identified any such procedure within the collective bargaining agreement ("CBA"). As will be later discussed, whether putting an employee on notice was standard procedure is immaterial for purposes of summary judgment. Therefore, for the reasons stated herein, the EEOC's motion to strike proposed fact Nos. 72 and 73 will be denied.

The EEOC objects to Paragraph 97 with respect to only the word "resulting" because it implies that the second EAC investigation "resulted" from the creation and submission of Grievance 2006-25. Indeed, the cited material for this proposed fact does not support this inference, and therefore, the word "resulting" will be stricken from Paragraph 97 of Chrysler's proposed findings of fact.

Finally, the EEOC moves to strike Paragraphs 60, 63, and 65, arguing that these proposed facts "rely on supporting materials that constitute inadmissible hearsay." (Pl.'s Resp. 10.) As to Paragraph

60, the EEOC's objection is undermined by its own statement of proposed fact No. 11. Both proposed facts highlight what Wojciechowicz told Miltenberger, except that Chrysler's proposed fact is even more accurate.[6] Thus, because the EEOC already admitted the truth of the matter asserted, its motion to strike Paragraph 60 as inadmissible hearsay will be denied as moot.

Similarly, with respect to Paragraph 65, to the extent that the EEOC has admitted that Hobbs told Miltenberger that other employees complained about him showing favoritism toward other male employees, (Pl.'s Resp. to DPFOF ¶ 65), its motion to strike will be denied. To the extent that Chrysler represents that Young testified that Miltenberger told him that Hobbs said the *entire* shift was upset, the EEOC's motion will be granted because such statement is inadmissible hearsay.

Finally, Paragraph 63 of Chrysler's proposed facts states that "Miltenberger called Young a second time and told him that Zahn was now denying that she reported anything." (DPFOF ¶ 63.) In support, Chrysler cites Young's testimony. However, Young cannot testify to what Zahn told Miltenberger because it is inadmissible hearsay. Nonetheless, Chrysler indicates that the paragraph merely goes to show why Young came back to work at 9:00 p.m. Because the EEOC admits that Miltenberger called Young a second time at home, the court finds it appropriate to strike only the inadmissible hearsay portion of the statement that the EEOC disputes (that Zahn denied having reported anything), leaving the fact that Miltenberger called Young a second time. Therefore, what remains of Paragraph 63 is that Miltenberger called Young a second time at his home.

---

[6] The EEOC proposed that Wojciechowicz told Miltenberger that Zahn remarked that Miltenberger's decision to reassign Hobbs to the BOR area seemed discriminatory. (PPFOF ¶ 11.) However, Miltenberger actually testified that someone told him that Zahn said he shut down Hobbs because she was a female (Miltenberger Dep. 23); and Wojciechowicz actually testified that he informed Miltenberger that Zahn commented that Hobbs's job was going to be shut down because she was a woman (Wojciechowicz Dep. 28). Accordingly, Chrysler more accurately reflected this testimony. (*See* DPFOF ¶ 60.)

To recap, the EEOC's motion to strike will be denied as to Chrysler's proposed statements of fact Nos. 24-29, 30, 32, 35, 36, 58, 60, 72, and 73. Its motion to strike will be granted as to Chrysler's proposed statements of fact Nos. 40, 41, 48, and 59. Finally, Nos. 63, 65, 66, 71, and 97 will be stricken, but only in part as noted above.

## B. Retaliation Claims.

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The Act also contains an antiretaliation provision, which forbids an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice made an unlawful employment practice by this title," or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." § 2000e-3(a). "The antiretaliation provision protects an individual not from all retaliation," however, "but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).

Although there is a direct and indirect method for proving a Title VII retaliation claim, the EEOC proceeds under the direct method of proof. (Pl.'s Resp. 10.) Under the direct method of proof, to establish a prima facie case of retaliation, the plaintiff must show the following: "(1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal link between the two." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 677 (7th Cir. 2010) (citing *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009)). Here, Chrysler's Motion for Summary Judgment is premised on the second element; it argues that Hobbs and Zahn cannot establish a prima facie case of retaliation because neither employee suffered any adverse employment action. Chrysler concedes, solely for purposes of its motion for summary judgment, that Hobbs and

Zahn engaged in protected speech. Therefore, I will begin with the second element, focusing on whether any adverse action was taken against Hobbs and Zahn.

A materially adverse action "means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N.*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); *see also Chapin*, 621 F.3d at 678. "In determining the significance of any given act of retaliation, the test is objective but 'context matters' and we look at the 'constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used. . . .'" *Chapin*, 621 F.3d at 678 (quoting *Burlington N.*, 548 U.S. at 69; *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008)).

### Threats of Termination

Hobbs and Zahn base one of their retaliation claims on Young's threats of termination during their individual meetings on June 8, 2006. Chrysler argues, however, that "neither Zahn nor Hobbs suffered any lost time, neither was tangibly disciplined in any way, lost any benefits or was given a less desirable job," and thus, neither suffered from a materially adverse action. (Def.'s Mot. 11.) Chrysler further argues that "there is no evidence from either employee in this case that Young threatened either of their jobs *if they filed grievances or charges*. To the contrary, it is undisputed that Young either said or yelled to both that their allegations were being investigated and if they turned out to be unfounded, both could be subject to discipline including termination." (Def.'s Mot. 11.) Finally, Chrysler asserts that "[t]he alleged verbal harassment and intimidation is simply not the kind of actionable harm which Title VII contemplates." (Def.'s Mot. 12.)

An adverse employment action need not be tangible. *See Burlington N.*, 548 U.S. at 64-66. A tangible employment action constitutes 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision

causing a significant change in benefits.'" *Id.* at 75-76 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)) (Alito, J. concurring). Moreover, the Seventh Circuit has "declined to rule categorically that [disciplinary] warnings cannot be adverse actions." *Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849 (7th Cir. 2007) (citing *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 462 (7th Cir. 2007)). Recently, in *Chapin*, the Seventh Circuit noted the following:

> [W]e do not foreclose the possibility that a plaintiff could argue that a singular threat of termination had the impact of dissuading a reasonable worker from supporting a discrimination complaint, which might act as the necessary adverse action underlying his retaliation claim. *See, e.g., Pantoja v. Am. NTN Bearing Mfg.*, 495 F.3d 840, 849 (7th Cir. 2007) (allowing warnings of termination or other adverse actions to proceed to jury); *Beckel v. Wal-Mart Assocs.*, 301 F.3d 621, 624 (7th Cir. 2002) (suggesting that a threat to fire would be an actionable "anticipatory retaliation."). *But see Dunn v. Washington County Hosp.*, 429 F.3d 689, 690 (7th Cir. 2005) (stating that one unfulfilled threat could not be actionable and finding that "nasty" requests to withdraw a complaint did not cause injury).

*Id.* at 681 n.2. That a threat of termination is not "unquestionably a materially adverse action" (like termination), *see Burnett v. LFW Inc.*, 472 F.3d 471, 482 (7th Cir. 2006), highlights the context-driven nature of anticipatory retaliation allegations based on threats of termination.

Therefore, if true, that neither Zahn nor Hobbs was terminated, suffered any lost time, lost any benefits, or was given a less desirable job is not fatal to their claims. Rather, this case hinges on whether Young's warnings of *possible* termination constituted adverse action such that it constituted anticipatory retaliation. In my opinion, a reasonable trier of fact could conclude that the warnings Young administered were materially adverse.

To be sure, the evidence does not demonstrate that Young threatened termination *if Hobbs and Zahn filed grievances or charges*. Contextually, however, Young may not have needed to recite these precise words in order to deter or dissuade a reasonable employee from maintaining a charge of discrimination. In addition to Young and Wojciechowicz being present at each of Hobbs's and Zahn's meetings, Miltenberger—who was the subject of their complaints—was also present. Upon entering

Young's office, Hobbs was immediately placed on notice of termination for disrupting the workforce. Hobbs testified that Young kept insisting that Zahn said they talked about "women's discrimination." (Hobbs Dep. 85, 92.) Young concluded by throwing a notepad at Hobbs, demanding that she write a statement confirming that she was not accusing Miltenberger of sex discrimination. Young persisted in this request even upon learning that Hobbs did not read or write very well. In light of the foregoing, what a reasonable employee perceives "disrupting the workforce" to mean appears debatable in this situation. After all, at this point, Hobbs had only engaged in two conversations before meeting with Young, Miltenberger, and Wojciechowicz, including one with Zahn immediately after the start-up meeting and one with Miltenberger in his office.[7]

Young also put Zahn on notice, pending investigation, stating that she could be disciplined up to and including discharge. However, it is not clear from the record whether Young provided Zahn with a reason for why she may be terminated (when she first entered his office), and if he did, what reason he gave her. Young reminded Zahn that she was on a "last chance letter," and according to Zahn, he demanded to know whether she was accusing Miltenberger of discrimination. I cannot say that this accusation, coupled with such severe disciplinary warnings with potentially no explanation, would not dissuade a reasonable employee from making a discrimination charge.

Given the foregoing, the manner in which Young delivered his message to each woman matters. If he was screaming and pounding his fists on the table while threatening termination, as Zahn and Hobbs testified, this scenario paints a much more hostile and intimidating atmosphere than if Young delivered his message in a normal tone of voice, as he contends he did. Accordingly, the record contains sufficient evidence to raise a genuine issue of material fact as to whether Young's

---

[7] It appears that neither Hobbs nor Zahn even mentioned that they were going to file a grievance against Miltenberger before their individual meetings with Young, Miltenberger, and Wojciechowicz.

disciplinary warnings, coupled with the surrounding circumstances, would have dissuaded a reasonable worker from making or supporting a charge of discrimination.[8]

Additionally, although Chrysler argues that Young placed both employees on notice of possible termination if their allegations turned out to be false or maliciously motivated, the record does not conclusively prove such to be the case. The EEOC notes that making false claims of discrimination and disrupting the workforce are separate infractions, but Young listed only disrupting the workforce as the possible basis for termination in an email he composed on June 8, 2006. It is unclear if and when Young conditioned his notice of termination on this specific reason. Whether Young told Hobbs and Zahn that this infraction was the basis for possible termination weighs on the context-driven inquiry of whether the threats of termination were materially adverse. Accordingly, this factual dispute may prove material to a factfinder, thereby precluding judgment in favor of Chrysler at this stage.

Moreover, Chrysler's attempt to liken this case to *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673 (7th Cir. 2010), is unavailing. It is true, as Chrysler states, that the Seventh Circuit in *Chapin* found that the district court erred in not determining, as a matter of law, that the employer did not violate the anti-retaliation provision of Title VII in threatening the plaintiff with termination if he did not withdraw his EEOC claim. *Id.* at 676, 681. However, the plaintiff in *Chapin* presented only two theories of why he suffered adverse action at the hands of his employer: actual termination and constructive termination. *Id.* at 677. The Seventh Circuit determined that neither of these theories formed the basis of a retaliation claim. *Id.* at 678-79, 681. In *Chapin*, the plaintiff did not argue that

---

[8] Because this fact is material to the EEOC's retaliation claim, Chrysler cannot prevail on its motion by virtue of agreeing (for purposes of this motion) to Hobbs's and Zahn's statements that Young's behavior was that of "yelling, ranting and pounding his fists on the table." (Def.'s Reply 6.)

the mere threat of termination constituted a materially adverse action, like the EEOC has argued in the present action, and the Seventh Circuit did not consider this theory.

Finally, assuming that putting an employee on notice was standard procedure, as Chrysler contends, Young's having followed standard procedure would not necessarily preclude a finding of adverse action. Chrysler cannot skirt a retaliation claim by relying on its standard procedure if, in fact, that procedure results in an action that would dissuade a reasonable worker from making or supporting a charge of discrimination. *See EEOC v. Ind. Bell Te. Co.*, 256 F.3d 516, 520-22 (7th Cir. 2001) (finding that "[e]mployers cannot by their consent (in or out of a collective bargaining agreement) avoid duties under federal law," and thus, an employer could not escape liability for sex discrimination by relying on the theory that the "collective bargaining agreement tied its hands").

Having found enough evidence for a reasonable factfinder to conclude that they suffered an adverse action by their employer, the court arrives at the third element of retaliation claims—a causal link between a statutorily protected activity and material adverse action.[9] Generally, with respect to causation, "suspicious timing alone is almost always insufficient to survive summary judgment." *Leitgen v. Franciscan Skemp Healthcare, Inc.*, No. 09-1496, 2011 U.S. App. LEXIS 631, at *18 (7th Cir. Jan. 13, 2011) (citing *Leonard v. E. Ill. Univ.*, 606 F.3d 428, 432-33 (7th Cir. 2010); *Turner v. Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir. 2010)). However, that is not to say that a litigant cannot overcome this general rule. *Id.* Given the close chain of events that led to Young's threats of termination, a reasonable finder of fact could infer the requisite causation to support a claim of retaliation.

---

[9] Although the first element of a retaliation claim was not in issue for purposes of this motion, I am persuaded that a reasonable factfinder could also conclude that Hobbs and Zahn engaged in statutorily protected activity.

**Grievance Procedures**

The EEOC also argues that Chrysler retaliated against Hobbs and Zahn by unlawfully depriving them of the grievance procedures that would normally be available to employees through the CBA. Specifically, the EEOC argues that Chrysler, with the consent of the union, placed Grievance 2006-25 on "joint hold" solely because Hobbs and Zahn filed EEOC charges. According to Chrysler, Hobbs and Zahn are not being deprived of access to the grievance process forever because once this case is resolved, Grievance 2006-25 would "necessarily be resurrected for final disposition." (Def.'s Reply 11.) Chrsyler also claims that because Local 75 never presented Grievance 2006-25 to management at the Milwaukee NPDC for response, any failure to process the grievance falls on the part of Local 75 and not Chrysler.

The EEOC cites *EEOC v. Bd. of Governors of State Colleges and Universities*, 957 F.2d 424 (7th Cir. 1992), in support of its claim that Chrysler retaliated against Hobbs and Zahn by failing to process Grievance 2006-25. In *Board of Governors*, the Board of Governors terminated an employee's grievance because he filed an age discrimination claim with the Commission pursuant to a provision under the CBA that directed an employee to elect filing a discrimination charge with the EEOC or to pursue the CBA's grievance process, but not both. *See id.* at 425-26. Finding that this "choice" resulted in the loss of a contractual benefit (the right to grieve), the Seventh Circuit found it to be discriminatory. *See id.* at 429-31.

Unlike in *Board of Governors*, here, the EEOC presents no evidence that Hobbs and Zahn have been deprived of the grievance procedures provided for in the CBA. At worst, the grievance process has been delayed. Notwithstanding any dispute over who put Grievance 2006-25 on hold, the EEOC cannot demonstrate that Hobbs and Zahn lost a contractual benefit because the evidence demonstrates that their right to grieve will be scrupulously honored once this litigation has ceased.

Nor has the EEOC demonstrated that Chrysler "doles out" benefits in a discriminatory fashion. *See Bd. of Governors*, 957 F.2d at 430 (benefits that are part of the employment relationship may not be doled out in a discriminatory fashion). Because Hobbs and Zahn have not lost their right to grieve, they have not suffered an adverse action with respect to the same, and the EEOC cannot maintain a retaliation claim for the alleged loss of this right.

Because the plaintiff cannot defeat summary judgment under the direct method of proof with respect to its claim that Hobbs and Zahn were deprived of the CBA's grievance procedures, it is left with proving retaliation under the indirect method of proof—the *McDonnell Douglas* method. To establish a prima facie case of retaliation under this method, the plaintiff must show that (1) they engaged in statutorily protected activity; (2) their job performance met their employer's legitimate expectations; (3) they suffered a materially adverse employment action; and (4) similarly situated employees who did not engage in statutorily protected activity received more favorable treatment than they did. *See Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 465 (7th Cir. 2002). As previously discussed, because their grievance has been put on hold and not categorically rejected, Hobbs and Zahn suffered no adverse employment action in this respect. Therefore, the plaintiff has failed to establish a prima facie case of retaliation for Chrysler's alleged failure to process Grievance 2006-25.

**NOW THEREFORE IT IS ORDERED** that the plaintiff's motion to strike be and hereby is **GRANTED** in part and **DENIED** in part;

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment be and hereby is **GRANTED** in part and **DENIED** in part. The defendant's motion with respect to the plaintiff's retaliation claim based upon Tom Young's alleged verbal harassment and threats of termination is denied. The defendant's motion with respect to the plaintiff's retaliation claim based upon Grievance 2006-25 being put on hold is granted.

**IT IS FURTHER ORDERED** that on March 7, 2011 at 9:30 a.m. in Courtroom 242, U.S. Courthouse, 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, the court will conduct a conference with the parties to discuss the further processing of this case to final resolution and judgment.

**SO ORDERED** this <u>17th</u> day of February 2011 at Milwaukee, Wisconsin.

**BY THE COURT:**

<u>s/ William E. Callahan, Jr.</u>
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge
